STATE, EX REL. GEORGE M. STILES, v. BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF UNION, AND SYLVESTER CAHILL, JR.

1. The general clause of reference, in the act to create the county of Union (*Pamph. L.* 1857, *p.* 244), to "all the jurisdiction, powers, rights, &c., which any other county in the state doth or may enjoy," includes and incorporates those general powers and provisions which belong to other counties as a class, and not such as are exclusive and exceptional.

2. It does not include the special provisions in the act of February 27th, 1857, which give the custody of the jails and prisoners in the counties of Essex and Hudson to the board of chosen freeholders.

3. *Daubman* v. *Smith*, 18 *Vroom* 200, cited and followed.

On *quo warranto* information, it is shown that the relator was elected sheriff of the county of Union, the 4th day of November, 1884, to serve for three years, and has since continued in said office; that as such officer he is entitled to the custody, rule, keeping and charge of the jail of said county, and of the prisoners therein, and that it is his duty so to act; that he has endeavored to discharge such duty, but has been hindered and prevented by the board of chosen freeholders of the county, and Sylvester Cahill, Jr., who, upon his election to the office of sheriff, he found in possession of the jail, and who has, on demand, refused to deliver it up to the relator, claiming the right to hold under the appointment and direction of the board of freeholders of the county; that he now holds and exercises the office of jailer or keeper of said jail, refuses to surrender and claims the right to hold under resolutions of the board of freeholders, adopted the 11th day of March, 1862, as follows: "Resolved by the board, that the act entitled "An act to transfer the charge and keeping of the jail and the

custody of the prisoners, in the counties of Essex and Hudson, from the sheriffs to the board of chosen freeholders, and for the employment of the prisoners, and to regulate the term of service therein, approved February 27th, 1857,' be extended to the county of Union, under the provisions of the ninth section of said act. Resolved, that this resolution take effect from and after the first of April next;" that the statutes and resolutions are insufficient in law to enable them to hold and execute this office, and the attorney-general requires them, in the name of the state, to answer by what warrant they claim the office and exercise the duties thereof, &c. To this information the board of freeholders filed a demurrer, and issue is formed by a joinder.

Argued at June Term, 1887, before Justices SCUDDER, DIXON and REED.

For the relators, *George T. Parrott.*

For the respondents, *C. D. Ward* and *R. V. Lindabury.*

The opinion of the court was delivered by

SCUDDER, J. The question raised by these pleadings is whether the sheriff of the county of Union or the board of chosen freeholders of that county is entitled to the custody of the jail. The chosen freeholders cannot hold it under the ninth section of the act of February 27th, 1857, relating to the jails and prisoners in the counties of Essex and Hudson, which extended the provisions of that act to the board of freeholders of the several counties of this state. That section was declared to be unconstitutional in *Daubman* v. *Smith*, 18 *Vr.* 200, in its attempted application to Camden county, because the object of the extension of its provisions to all the counties of the state was not expressed in the title. *Const., art.* 4, §. 7, ¶ 4. This decision restricted its operation to the counties of Essex and Hudson, as they only were named in the title of the act, thereby excluding all others. If this section be the

Stiles v. Freeholders of Union.

only authority under which they have kept the custody of the jail since the resolution of March 11th, 1862, they are in no better position than the freeholders of Camden county.

At the time the act of February 27th, 1857, was passed, the territory now included in the county of Union was a part of the county of Essex. By the act entitled "An act to create the county of Union," approved March 19th, 1857 (*Pamph. L., p.* 244), which took effect on the second Monday of April after its passage, this territory was constituted a distinct political division of the state, and set off from the county of Essex. Its powers and privileges are derived from the act which gave it a legal existence. After defining its boundaries in the first section and declaring that within those boundaries it was thereby erected into a separate county, in the second section its distinct corporate authority is thus described: "It shall have and enjoy all the jurisdiction, powers, rights, privileges, liberties and immunities, which any o.her county in this state doth or may enjoy," &c.

The obvious purpose of this declaration is that this county shall be politically equal with the other counties of the state. The word "any" has several meanings according to the subject which it qualifies. In synonymes it is distinguished from "some." Thus, it is said, "'some' applies to one particular part in distinction from the rest; 'any,' to every individual part without distinction. The former is altogether restrictive in its sense, the latter is altogether universal and indefinite." *Crabb's English Synonymes.* This is more noticeable when it is joined with another word, as "anything," "anywise," &c. Webster says: "Although the word 'any' is formed from '*one,*' it often refers to many." The true interpretation where there is a general clause of reference to other statutory powers will be found in *Rex* v. *Justices of Surry*, 2 *T. R.* 504, "that all the general powers and provisions given and made in acts *in pari materia*, shall be virtually incorporated in this, but that such provisions as are always considered special provisions shall not." *Potter's Dwarris* 218.

Among the general powers given by statute is this: "That

the sheriff of every county in this state shall have the custody, keeping and charge of the jail or jails within such county, and of all prisoners in such jail or jails," &c. *Rev.*, *p.* 1101, § 14.

The enactment " that in the counties of Essex and Hudson, the custody, rule, keeping and charge of the jails in such counties, and the prisoners in such jails, shall not be in the respective sheriffs of said counties, but, in each of said counties, shall be in the board of chosen freeholders of that county, and such jailer as they shall appoint for that purpose," &c., is exceptional, and a special provision applicable to these counties. The general clause of reference in the act to create the county of Union, to all the jurisdiction, powers, rights, &c., " which any other county in this state doth or may enjoy," includes and incorporates those general powers and provisions which belong to other counties as a class, and not such as are exclusive and exceptional.

A reading of the other sections of the act will make it more apparent that the intention of the legislature was to place the county of Union among the counties having general powers and privileges under conditions that are common to all, and not with those having peculiar provisions, which were supposed at the time to be better fitted for their need, where large cities and a greater population made a different control of the jails of the county advisable or necessary.

Recent legislation has authorized the board of chosen freeholders in the several counties of this state to assume and exercise such control over the county jails, but this will not affect the result of this information, as by the eighth section of this statute, " no appointment of any jail warden as aforesaid, shall take effect in any county during the term of office of any sheriff now in office in the said county." *Pamph. L.* 1887, *p.* 42. The relator being in office when this statute was approved, will not be affected by such appointment, if any should be made. The judgment will be for the relator on the demurrer to this information, with costs of prosecution.